# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

Vincent DiPietro,

       Plaintiff/Counterclaim Defendant,

v.                                                    **Case No.  3:06-cv-221**
                                                  **Judge Thomas M. Rose**

Morgan Stanley DW Inc.,

       Defendant/Counterclaimant.

---

### ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 15).

---

This matter is before the Court for decision on Defendant's Motion for Summary Judgment. Doc. 15. The instant case stems largely from the termination of Plaintiff Vincent DiPietro (DiPietro) from his employment with Defendant Morgan Stanley DW Inc. (Morgan Stanley). Morgan Stanley moves this Court to grant Summary Judgment on all four of DiPietro's claims: (1) national origin discrimination under Title VII and ORC § 4112.02; (2) retaliation under Title VII; (3) breach of contract; and (4) defamation. Doc. 15. DiPietro presents no direct evidence of a discriminatory motive on behalf of Morgan Stanley and cannot prove his prima facie case of indirect discrimination. Also, DiPietro cannot establish a causal link between his conduct and his termination sufficient to prove his retaliation claim. Further, since DiPietro was an at-will employee, he gave no consideration when he resigned in exchange for forgiveness of his loans and so no contract was formed. Finally, DiPietro's defamation claim is time-barred by the statute of limitations. Therefore, Summary Judgment will be awarded on all of DiPietro's claims.

**A.    Background**

In the fall of 2000, Vincent DiPietro left Paine Webber and began employment with Morgan Stanley as a financial advisor in the fall of 2000.  See Deposition of Vincent DiPietro, taken on March 28, 2007, at 29, hereinafter "DiPietro Depo."  Although DiPietro originally worked in Morgan Stanley's downtown Dayton office, he moved to the Centerville office in 2003 when the downtown office closed.  DiPietro Depo. at 54.  In Centerville, Douglas Cline was DiPietro's Branch Manager until February 2004, when Anthony Ritter became his Branch Manager.  DiPietro Depo. at 53, 61.

1.    <u>The loan agreement between Morgan Stanley and DiPietro</u>

In January 2001, DiPietro received a loan from Morgan Stanley for $567,732.  DiPietro Depo. at 30, 39-40.  The amount of the loan was based on client accounts DiPietro transferred to Morgan Stanley from Paine Webber.  Id.  In the loan agreement signed by DiPietro and Morgan Stanley, Morgan Stanley agrees to forgive the debt in equal installments over four years, provided DiPietro meet certain requirements.  See DiPietro Exhibit 4 as attached to DiPietro Depo, at p.00092, hereinafter "DiPietro Ex."  The loan agreement also states that the agreement "may not be modified or amended except by a writing signed by both parties hereto."  DiPietro Ex. 4 at p. 00089.

2.    <u>DiPietro's poor attendance and conflicts with his sales assistant</u>

At the Centerville office, sales assistant Ryka Shaffer was assigned to assist DiPietro and several other financial advisors.  DiPietro Depo. at 55-56.  Her role included taking and forwarding messages from customers, completing and forwarding paper work, and helping

financial advisors complete financial transactions. DiPietro Depo. at 56. Shaffer and DiPietro did not have a positive working relationship. DiPietro claims Shaffer was unwilling to help him and spoke negatively about him to clients. DiPietro Depo. at 114, 133, 148. Shaffer complained to Ritter and Thomas Finley, the Branch Service Manager, about DiPietro's frequent absences from the office and his failure to check his messages. See Affidavit of Vincent Ritter at ¶ 4, hereinafter "Ritter Aff.;" Affidavit of Thomas Finley at ¶ 8, hereinafter "Finley Aff." Ritter and Finley spoke to DiPietro about his poor attendance and conflicts with Shaffer on several occasions. Ritter Aff. at ¶ 5; Finley Aff. at ¶ 9. On February 4, 2005, Ritter and Finley met with DiPietro about these issues. DiPietro Depo. at 151. They told DiPietro he could resign and, if so, Morgan Stanley would forgive the remaining balance of his loan. Id. at 149-50. DiPietro requested time to think about the proposal. Id. at 150. On February 9, 2004, Ritter gave DiPietro a final ultimatum: either he would resign that day in exchange for forgiveness of his loan, or he would be terminated. Id. at 156. DiPietro chose to resign. Id. at 158-59.

      3.      <u>Incidents involving DiPietro and Steve O'Neill</u>

During DiPietro's employment in the Centerville office, there were several incidents involving him and co-worker Steve O'Neill. In early 2003, DiPietro and O'Neill had a dispute concerning the use of financial software. DiPietro Depo. at 57-61. The problem was resolved when the office agreed to share the software. Id. at 61.

Shortly after the software incident, O'Neill posted a memo on the break room wall entitled "Vincent DiPietro Sightings." Id. at 65. Although the memo made no explicit reference to Jimmy Hoffa, DiPietro felt the memo was a derogatory slant and understood it to be a

reference to the infamous Teamsters president.  Id. at 66, 219.  DiPietro reported the memo to the Branch Manager at that time, Douglas Cline, who took the memo down.  Id. at 68.

After the memo incident, O'Neill began sending e-mails to DiPietro containing jokes that were anti-Semitic, anti-Catholic, anti-Islamic, and negative to women.  Id. at 69.  DiPietro informed Cline about O'Neill's behavior.  Id. at 72.  When Anthony Ritter became DiPietro's Branch Manager in February 2004, DiPietro told him about these emails as well.  Id. at 53, 72.  Both Branch Managers told O'Neill to stop emailing the jokes.  Id. at 72.  O'Neill stopped sending emails, but then began to hand-deliver notes to DiPietro and would make personal visits to DiPietro's office to tell him offensive jokes.  Id. at 69-70.

The final incident between DiPietro and O'Neill occurred on August 24, 2004.  Id. at 75. DiPietro, O'Neill, Ritter, and Finley were standing near Finley's office, talking at the end of the work day.  Id.  During the conversation, O'Neill produced a small pocketknife, and jokingly commented that he might give DiPietro a "haircut."  See Finley Aff. at ¶ 5.  Using a "mob like voice," O'Neill said, "Yo, how bout I lower his eyebrows."  DiPietro Depo. at 76.  According to DiPietro, the incident "seemed like it might have been mildly amusing" to Ritter.  Id. at 78. DiPietro felt threatened by the incident and left the office.  Id. at 78.  The following day, DiPietro complained to Ritter about the knife incident.  Id. at 80-81.  Ritter reprimanded O'Neill and reassigned him to Morgan Stanley's Beavercreek office to avoid further contact with DiPietro.  Id. at 88-89; Affidavit of Steve O'Neill at ¶ 14.  After O'Neill's transfer in August 2004, DiPietro alleges no further problems with national origin discrimination.  DiPietro Depo. at 92-93.

**B.     Standard of Review**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact.  *Id.*, at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, (quoting Fed. R. Civ. P. 56(e)).  Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56

"requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

In addition to moving for summary judgment on DiPietro's federal claim, Morgan Stanley is seeking summary judgment on DiPietro's claims brought under Ohio law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)). Also, to the extent that the highest court in Ohio has not addressed the issue presented,

this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

**C.    Analysis**

      1.    <u>National origin discrimination under Title VII and ORC § 4112.02</u>

DiPietro's first claim is that Morgan Stanley discriminated against him based on his national origin in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Title VII states that "[i]t shall be unlawful employment practice for an employee…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…national origin…." A plaintiff may survive a defendant's motion for summary judgment on a claim of discrimination either by presenting direct or indirect evidence.

      a.    Direct evidence

Direct evidence is where an employer's statement directly shows discriminatory motive. See *Schlett v. Avco Fin. Servs., Inc.*, 950 F. Supp. 823, 828 (N.D. Ohio 1996). Evidence that would require the jury to infer a fact is not direct evidence. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). Direct evidence in the form of verbal comments is akin to an employer telling its employee, "I fired you because you are disabled." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998). In analyzing discriminatory comments, factors to consider include whether a decision maker or an agent made the comment, whether the comment was related to the decision-making process, and whether the comment and the discriminatory act were close in time. See *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994).

In the instant case, DiPietro argues that the amused reaction of his immediate supervisor, Anthony Ritter, to a co-worker's mob like comments directed at DiPietro constitutes direct evidence that he was terminated because of his Italian heritage.  He also argues that Ritter's failure to stop another employee from sending discriminatory emails to him constitutes direct evidence.  However, DiPietro presents no evidence that the comments and emails, which were not made by a decision maker, were part of the decision-making process.  Moreover, the incident involving the mob reference was made nearly six months before DiPietro resigned or was terminated.  The incident involving the "Vincent DiPietro Sightings" poster and subsequent emails occurred before the August 2004 incident involving the mob reference.  Such evidence would require a jury to make several inferences in order to conclude DiPietro was terminated due to his national origin.  Thus, there is no direct evidence of a discriminatory motive on behalf of Morgan Stanley.

> b.    Indirect evidence

Where the plaintiff is unable to show direct evidence of discrimination, courts use a burden-shifting approach.  The Supreme Court explained:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804 (1973)).

In order to prove a *prima facie* case of disparate treatment under Title VII based upon indirect evidence, a plaintiff must prove that: (1) he is a member of a protected class; (2) an adverse employment action was taken against him; (3) he was qualified for the job; and (4) he was replaced by someone outside the protected class, or treated differently than similarly situated non-protected employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); see also *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 728 (6th Cir. 1999); *Kirkland v. St. Elizabeth Hosp.*, 120 F. Supp. 2d 660, 665-66 (N.D. Ohio 2000); *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 886 n.16 (S.D. Ohio 1998). In order to prove the alternative basis of the fourth element, a plaintiff must produce evidence that the "relevant other employees are 'similarly situated in all respects.'" See *Hollins v. Atlantic Co.*, 188 F.3d 652, 659 (6th Cir. 1999) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Once the plaintiff establishes the *prima facie* case, the employer must meet its burden of production to establish a legitimate, nondiscriminatory reason for the plaintiff's discharge or denial of promotion. See *Texas Department of Comm. Affs. v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S., at 802. The burden of production then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's legitimate reasons are merely pretexts for discrimination. See *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may establish pretext by showing that the employer's proffered explanation is false or unworthy of credence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

In the instant case, there is no genuine issue of fact but that Morgan Stanley did not replace DiPietro with someone outside the protected class and did not treat DiPietro differently than similarly situated non-protected employees. DiPietro has not set forth any evidence to

support a finding that he was replaced by someone who was not of Italian heritage. Although DiPietro argues that Ryka Shaffer and Steve O'Neill were treated differently than him, he has brought no evidence to the Court's attention that Ms. Shaffer and Mr. O'Neill were similarly situated employees. Unlike DiPietro, neither Shaffer nor O'Neill engaged in repeated absenteeism. Moreover, Shaffer was a sales assistant with duties that were generally secretarial in nature; DiPietro was a financial advisor. DiPietro Depo. at 29, 56. Thus, DiPietro has failed to show a discriminatory motive on behalf of Morgan Stanley.

Additionally, DiPietro has no evidence that Morgan Stanley's legitimate, non-discriminatory reason for demanding his resignation was pretextual. Rather than call into question the legitimacy of Morgan Stanley's decision, DiPietro criticizes the wisdom of the decision by pointing out that 70% of his clientele have followed him to his new employment and that Shaffer was hostile to him. Doc. 17. Even if Morgan Stanley made its decision to terminate DiPietro based on information that later turned out to be inaccurate, the reason is not pretextual "simply because it is ultimately shown to be mistaken or incorrect." *Kurincic v. Stein, Inc.*, 30 Fed. Appx. 420, 425 (6th Cir. 2002). For these reasons, Summary Judgment will be awarded on DiPietro's national origin discrimination claim.

2.  Retaliation under Title VII

DiPietro claims that Morgan Stanley terminated his employment in retaliation in response to complaints he made to his superior concerning the August 2004 incident. To establish a prima facie case of retaliation, DiPietro must show that (1) he engaged in a protected activity; (2) Morgan Stanley was aware of such activity; (3) Morgan Stanley thereafter took adverse employment action against DiPietro; and (4) there was a causal connection between the

protected activity and the adverse employment action. *Bacon v. Honda of Am. Mfg., Inc.*, 192 Fed. Appx. 337, 342 (6th Cir. 2006).

To establish a causal connection, there must be evidence sufficient to raise an inference that the protected activity was the "likely reason for the adverse action" *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). When the basis of the causal connection element is temporal proximity between an employer's knowledge of protected activity and an adverse employment action, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The Sixth Circuit has interpreted "very close" on a case-by-case basis; generally, only a few weeks is "very close." See e.g. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) (less than one month sufficient); *Smith v. City of Salem*, 378 F.3d 566, 571 (6th Cir. 2004) (less than a week sufficient); *DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir. 2004) (three weeks sufficient). Absent additional evidence, two to five months is a "loose temporal proximity ... insufficient to create a triable issue." *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999).

In the instant case, there is no genuine issue but that DiPietro cannot establish a causal link between his actions and his termination. DiPietro complained to Ritter about the August 2004 incident the day after it happened and O'Neill was transferred later that month. DiPietro Depo. at 80-81, 92-93. DiPietro alleges no further problems with national origin discrimination after O'Neill's transfer. Id. at 92-93. On February 4, 2005, nearly six months after the August 2004 incident, Ritter and Finley first spoke with DiPietro concerning his termination or resignation. Id. at 151. DiPietro resigned five days later, on February 9, 2005. Id. at 156. A nearly six-month period between DiPietro's alleged protected activity and Morgan Stanley's

alleged adverse employment action is insufficient to establish a causal link between the two. DiPietro has failed to present additional evidence to connect his complaint to Ritter with the events surrounding his resignation.  Additionally, DiPietro has no evidence that Morgan Stanley's legitimate, non-discriminatory reason for demanding his resignation was pretextual. For these reasons, Summary Judgment will be awarded on DiPietro's retaliation claim.

        3.    <u>Breach of Oral Contract</u>

DiPietro claims that Morgan Stanley entered into and breached an oral contract with him which called for Morgan Stanley to forgive his loans and tax obligations in exchange for his resignation.  Doc. 1 at ¶¶ 20-27.  This claim fails for two reasons.  First, a contract is not binding "unless supported by consideration."  *Lake Land Employment Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 246-47 (2004).  Consideration is either a "detriment to the promisee or a benefit to the promisor."  *Id.* at 247.

Since DiPietro was an at-will employee, Morgan Stanley "may legally terminate the employment relationship at any time and for any reason."  *Id.* at 247.  Thus, his resignation would not provide any benefit to Morgan Stanley since Morgan Stanley could terminate his employment at any time.  His resignation also could not constitute a detriment because he had no right to continued employment.  Thus, DiPietro's resignation cannot constitute sufficient consideration.  Although consideration need not be economically valuable to be sufficient, DiPietro has failed to show what non-economic benefit Morgan Stanley sought, if any, in having him resign rather than be terminated.  Second, the original loan agreement between DiPietro and Morgan Stanley states that the agreement "may not be modified or amended except by a writing signed by both parties hereto."  See DiPietro Ex. 4.  Where an agreement "clearly and

unambiguously prohibits oral modification of its terms," such agreement is "entirely ineffective." *D.L. Baker & Co. v. Acosta*, 720 F. Supp. 615, 618 (N.D. Ohio 1989). If the alleged oral contract between DiPietro and Morgan Stanley concerning forgiveness of the note and payment of taxes was to be conceived of as an oral modification of the original agreement it would be ineffective. For these reasons, Summary Judgment will be awarded to Defendant on DiPietro's breach of oral contract claim.

      4.   <u>Defamation</u>

      In his Complaint, DiPietro claims that Morgan Stanley made "derogatory and defaming statements about [his] character" based on statements made by Shaffer and O'Neill to his clients. Doc. 1. Although Morgan Stanley moves this Court to dismiss DiPietro's defamation claim, DiPietro does not address this claim in his Response to Defendant's Motion for Summary Judgment. Docs. 15, 17. Defamation claims between private parties are subject to a one-year statute of limitations. R.C. § 2305.11(A); *Bell v. Ohio State Bd. of Trs.*, 2007 Ohio 2790 at ¶19 (10th App. Dist. 2007). DiPietro filed this action on June 30, 2006. Doc. 1. However, all of the alleged conduct that forms the basis of DiPietro's defamation claim occurred before June 30, 2005. DiPietro claims that Shaffer made defamatory statements to DiPietro's clients while she worked for DiPietro. DiPietro Depo. at 184-88. Since DiPietro resigned or was terminated on February 9, 2005, any such statements were made before June 30, 2005. Id. at 156. DiPietro also claims that O'Neill made defamatory statements to one of DiPietro's clients in February or March of 2005, more than one year before June 30, 2006. Id. at 181. Therefore, Summary Judgment will be awarded on DiPietro's defamation claim as it is time-barred under R.C. § 2305.11(A).

**D.      Conclusion**

For reasons herein stated, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 15).  DiPietro presents no direct evidence of a discriminatory motive on behalf of Morgan Stanley and cannot prove his prima facie case of indirect discrimination.  DiPietro cannot establish a causal link between his conduct and his termination sufficient to prove his retaliation claim.  Further, since DiPietro was an at-will employee, he gave no consideration when he resigned in exchange for forgiveness of his loans and so no contract was formed. Finally, DiPietro's defamation claim is time-barred by the statute of limitations.  Therefore, Summary Judgment will be awarded on all of DiPietro's claims.  Final pretrial on Defendant's counterclaims remains set for December 20, 2007 at 3:30 p.m., in chambers.[1]

**DONE** and **ORDERED** in Dayton, Ohio, Monday, October 15, 2007.


s/Thomas M. Rose
_____
THOMAS M. ROSE

UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Christopher E. Cotter in drafting this opinion.